USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: _2/19/19_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSE FIGUEROA,

                    Plaintiff,

        - against -

153 EAST 33RD ST FAMILY LIMITED
PARTNERSHIP, et al.,

                    Defendants.

---

**ORDER**

18 Civ. 2621 (ER)

Ramos, D.J.:

On January 29, 2019, Defendants requested a telephone conference because "Plaintiff's counsel [Stuart H. Finkelstein] has refused to produce his client [Jose Figueroa]" for a deposition.[1]  Doc. 52, at 1.  On February 1, 2019, Magistrate Judge Fox held a telephone conference where Mr. Finkelstein stated that he would move to withdraw as counsel but did not provide a reason for the withdrawal, asserting that it was privileged.  Magistrate Judge Fox entered a minute entry providing that "plaintiff's counsel will move to withdraw as counsel on or before February 11, 2019."

On February 5, 2019, the parties filed a stipulation of discontinuance without prejudice and without costs or attorneys' fees against any party.  Doc. 54.  The next day, the Clerk's Office referred the stipulation to this Court for approval because it was not pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), which provides that "a stipulation of dismissal signed by all

---

[1] The Court takes judicial notice that on that same day, Judge Caproni, in a case involving a different plaintiff represented by Mr. Finkelstein, ordered him to "show cause why he should not be referred to the Grievance Committee of the Southern District of New York for voluntarily dismissing his client's case with prejudice in apparent violation of Rule 1.2(a) of the New York Rules of Professional Conduct." *Burgess v. Two Charlton Owners Corp.*, No. 18 Civ. 5955 (VEC), Doc. 46, at 2 (S.D.N.Y. Jan. 29, 2019).

parties who have appeared" terminates an action "without a court order." Fed. R. Civ. P. 41(a)(1)(A)(ii).  The parties then filed the same stipulation but indicated on the docket that it was pursuant to Rule 41(a)(1)(A)(ii), which the Clerk's Office rejected as a duplicate document with the instruction "Do Not Re-File."  Doc. 55.  On February 8, 2019, the parties filed yet another stipulation of discontinuance without prejudice that contained additional language stating that it was pursuant to Rule 41(a)(1)(A)(ii).  Doc. 56.

On February 8, 2019, the Court directed Mr. Finkelstein to file a letter with the Court (1) clarifying the status of his anticipated motion to withdraw, and (2) establishing that he has authority to stipulate to dismiss this case.  Doc. 57, at 2; *see United States v. Mercedes-Benz of N. Am., Inc.*, 547 F. Supp. 399, 400 (N.D. Cal. 1982) ("While the filing of a stipulation of dismissal is effective automatically and does not require judicial approval, the court, exercising its inherent powers, may look behind it to determine whether there is collusion or other improper conduct giving rise to the dismissal."); *see also Thomsen v. Terrace Nav. Corp.*, 490 F.2d 88, 89 (2d Cir. 1974) (per curiam) (holding that the court has inherent power to set aside a voluntary discontinuance where counsel settled the case without his client's consent).

In response, Mr. Finkelstein stated that Defendants' counsel initially would only agree to stipulate to a dismissal *with* prejudice.  Doc. 59.  Mr. Finkelstein stated that he "did not have authority from [his] client to do so," which prompted him to request to move to withdraw as counsel.  *Id.*  After the February 1 telephone conference, Defendants' counsel agreed to stipulate to dismiss *without* prejudice and without costs or attorneys' fees against any party, which was agreeable to Mr. Finkelstein.  *Id.*  Mr. Finkelstein did not address whether he had authority to stipulate to a dismissal without prejudice.

On February 12, 2019, the Court directed Mr. Finkelstein to file an affidavit under penalty of perjury specifying the following:  (1) his grounds for believing that his lack of authority to dismiss the case with prejudice would constitute an appropriate basis to withdraw; (2) when he last had contact with Plaintiff, and the method of that communication; (3) whether he informed Plaintiff of Defendants' offer to stipulate to dismiss without prejudice, and if so, when and how he informed Plaintiff; (4) whether Plaintiff consented to stipulate to dismiss this case, and if so, when and how Plaintiff consented; and (5) whether any party has paid or agreed to pay any consideration to settle this case.  Doc. 60, at 2.

According to his affidavit, Mr. Finkelstein apparently doubted his ability to continue litigating the case "[i]n light of Mr. Figueroa not returning any of [his] phone calls in which [he] left voice mail messages." Doc. 62, ¶ 2. Mr. Finkelstein acknowledged that he "should have advised Judge Fox during [the] phone conference that [he] was unsuccessful in obtaining any communication with Mr. Figueroa." *Id.* Mr. Finkelstein stated that his "last contact with Mr Figueroa was in the early part of January, 2019 wherein [he] left the last of [his] approximate six voice mail messages." *Id.* Mr. Finkelstein did not explicitly state whether he attempted to inform or obtain the consent of Mr. Figueroa regarding the stipulations to dismiss in early February, but given that Mr. Finkelstein had not contacted him since early January, it is apparent that Mr. Finkelstein did not do so.  Mr. Finkelstein further stated that he thought it was in Mr. Figueroa's "best interests" to avoid potentially being liable for attorneys' fees and costs "in the event the case was dismissed by the court for failure to prosecute or [Mr. Finkelstein] had filed a motion to be relieved as counsel." *Id.* ¶ 5. Although not stated explicitly, this was seemingly Mr. Finkelstein's rationale for stipulating to dismiss without prejudice and without costs or attorneys' fees against any party, notwithstanding that Mr. Figueroa did not consent to dismiss his case.  Mr.

Finkelstein also stated that "[n]o party to this action has been paid, or agreed to any compensation, consideration, monetary or otherwise, to settle this case." *Id.* ¶ 6.

Rule 1.2(a) of the New York Rules of Professional Conduct provides: "[A] lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to settle a matter." N.Y. Rules of Prof'l Conduct r. 1.2(a).[2] "The decisions specified in paragraph (a), such as whether to settle a civil matter, must . . . be made by the client." *Id.* cmt. 1. Thus, "insofar as voluntary dismissals without prejudice serve to settle civil matters—even if only temporarily—the decision as to whether to agree to voluntary dismissal must be made by the client." *Mora v. Bareburger Grp. LLC*, No. 16 Civ. 4373 (FB) (RML), 2018 WL 4522086, at *3 (E.D.N.Y. July 12, 2018), *report and recommendation adopted in part, rejected in part on other grounds*, 2018 WL 4954088 (E.D.N.Y. Oct. 11, 2018).

Mr. Finkelstein stated under penalty of perjury that his "last contact with Mr Figueroa was in the early part of January, 2019." Doc. 62, ¶ 2. Notwithstanding his lack of consultation with his client, Mr. Finkelstein filed stipulations purporting to dismiss this case on February 5, 6, and 8. Docs. 54, 55, 56. Accordingly, Mr. Finkelstein is ordered to show cause, by **March 15, 2019**, why he should not be referred to the Grievance Committee of the Southern District of New York for apparently violating Rule 1.2(a) of the New York Rules of Professional Conduct.

It is SO ORDERED.

Dated: February 15, 2019
      New York, New York

Edgardo Ramos, U.S.D.J.

---

[2] *See also* N.Y. Rules of Prof'l Conduct r. 1.4(a)(1)(iii) ("A lawyer shall . . . promptly inform the client of . . . material developments in the matter including settlement or plea offers.").